**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 1:14-CR-188 |
| ) | |
| CREDIT SUISSE AG, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**UNOPPOSED MOTION OF CREDIT SUISSE AG
TO CONTINUE SENTENCING**

Credit Suisse AG ("Credit Suisse" or "the Bank") files this Unopposed Motion to Continue the sentencing currently scheduled for August 12, 2014. On May 19, 2014, Credit Suisse pleaded guilty to a one-count Information charging the Bank with conspiring to aid and assist in the filing of false federal income tax returns and documents under 18 U.S.C. § 371. During the plea hearing, in addressing a proposed sentencing date, Credit Suisse explained that it would seek regulatory relief from the United States Department of Labor ("DOL") that would enable Credit Suisse's affiliated asset managers to continue to provide services to pension plans notwithstanding the guilty plea of the Bank. Through its affiliated asset managers, Credit Suisse manages several billion dollars of assets for more than one hundred such pension plans, which the DOL regulates under the Employee Retirement Income Security Act of 1974 ("ERISA"). DOL regulations are triggered upon entry of the criminal judgment even though the conduct underlying the plea does not relate to pension plan management business of Credit Suisse's affiliated asset managers. This Court scheduled sentencing for August 12, 2014, which afforded some time to enable the DOL to consider the Bank's request for relief and avoid collateral consequences to the pension plans.

1

Credit Suisse filed for regulatory relief on the first day possible -- the day of the plea proceeding. Mindful of this Court's sentencing date, Credit Suisse has responded promptly to each question raised by the DOL to facilitate the prompt resolution of the request. The DOL likewise has been acting with dispatch, as two DOL lawyers have been working nearly full time on the matter, spending several hundreds of hours. However, despite the best efforts of Credit Suisse and the DOL, for the reasons described below it is now clear that a sentencing date of August 12, 2014 does not provide sufficient time for the DOL to grant permanent relief. If sentencing takes place before final relief is granted, plans and their participants would be harmed, as discussed below. While there have been discussions about some sort of temporary relief, Credit Suisse believes that it is in the best interest of pension plans and their participants to be assured of permanent relief prior to sentencing.

To enable the DOL to complete its review prior to sentencing, Credit Suisse respectfully requests that this Court grant a modest continuance of the sentencing date, until at least November 1, 2014. Counsel has consulted with counsel for the United States, which does not oppose this request, which would avoid potentially negative consequences to pension plan assets.

## DISCUSSION

**I. ABSENT ADDITIONAL TIME TO SECURE THE DEPARTMENT OF LABOR EXEMPTION, IMPOSITION OF SENTENCE WOULD DISQUALIFY CREDIT SUISSE FROM ACTING AS A QUALIFIED PROFESSIONAL ASSET MANAGERS FOR ERISA-REGULATED PENSION PLANS**

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, prohibits a fiduciary managing an investment fund from engaging in virtually any type of financial transaction on behalf of the plan without an exemption. *See* 29 U.S.C. §§ 1006 (prohibited transactions) & 1108 (exemptions). The statutory framework thus prohibits all ordinary transactions by a fiduciary, such as Credit Suisse's affiliated asset managers, absent a

statutory exemption, and confers on the DOL authority to grant those exemptions. *See* 29 U.S.C. § 1008(a) (providing that the DOL "shall establish an exemption procedure for purposes of … grant[ing] a conditional or unconditional exemption of any fiduciary or transaction, or class of fiduciaries or transactions, from all or part of the restrictions imposed by" section 1006). Recognizing that ensuring compliance as to each of the many exemptions was cumbersome and inefficient, the DOL promulgated an exemption for Qualified Professional Asset Managers ("QPAM"). Commonly called a "utility exemption," the QPAM exemption permits certain qualified investment managers, such as Credit Suisse's affiliated asset managers, to engage in regular trading activities that otherwise would be prohibited under the ERISA framework. *See* Notice, <u>Prohibited Transaction Exemption 84-14, Class Exemption for Plan Asset Transaction Determined by Independent Qualified Professional Asset Managers</u>, 49 Fed. Reg. 9494-02 (Mar. 13, 1984). The prohibited transaction exemption is critical to trading by asset managers. QPAMs such as the affiliated asset managers of Credit Suisse and their counterparties regularly rely on this exemption for bond trading, currency trading, swaps contracts, swaps clearing, and real estate transactions, among other transactions. Through its asset management affiliates, the Bank engages in these transactions regularly in managing several billion dollars of assets for more than one hundred pension plans. To be clear, the QPAM exemption is not required by Credit Suisse when it is acting in its broker or dealer capacity.

The QPAM exemption further provides that neither the QPAM – nor any of its affiliates – have been convicted of certain crimes, including income tax evasion. Specifically, section I(g), provides the following:

> Neither the QPAM nor any affiliate thereof (as defined in section V(d)), nor any owner, direct or indirect, of a 5 percent or more interest in the QPAM is a person who within the 10 years immediately preceding the transaction has been either convicted or released from imprisonment, whichever is later, as a result of … income tax evasion …

*See* Prohibited Transaction Exemption 84-14, section I(g). A party is considered to have been "convicted" as of entry of the criminal judgment following sentencing. *See id.* (providing that "[f]or purposes of this section (g), a person shall be deemed to have been 'convicted' from the date of the judgment of the trial court, regardless of whether that judgment remains under appeal"). As a result, absent relief from the DOL, when the judgment is entered in this case, the asset management affiliates of Credit Suisse will be disqualified from relying on the QPAM exemption. The judgment would effectively preclude the asset management affiliates of the Bank from managing these plans, which will lose the exemption's protection. In addition to prohibiting ordinary financial transactions, the loss of the QPAM exemption would cause the Bank to breach contracts between Credit Suisse entities and ERISA plans that require qualification for the QPAM exemption and with counterparties that have ongoing transactions dependent on the QPAM exemption. Transition of the billions of dollars of assets to another QPAM would require substantial time and resources, as the plans may be forced to transition their accounts to other managers at a time and on a basis that may prove disadvantageous to the pension plans and their participants.

The parties have worked expeditiously to resolve this issue before the currently scheduled sentencing date. In light of the importance of this exemption, immediately after pleading guilty in this matter, Credit Suisse filed an application with the DOL requesting an individual QPAM exemption that would allow it to use the class exemption despite the entry of judgment. Because the regulations governing these applications require a full description of the offense of conviction and penalty, there is no practical way to file an application before the parties have entered into a plea agreement and the guilty plea has been accepted by the court. To expedite DOL's consideration of the application, Credit Suisse has responded promptly to each question

raised by the agency in connection with its filing, conferring with the DOL almost daily. Likewise, the DOL has devoted substantial resources to the request. Credit Suisse understands that two DOL lawyers have been working almost full time on the matter since the plea hearing and that several senior DOL staff have devoted nearly a hundred hours of time considering the issue.

Still, the review is process-intensive, and time consuming tasks remain before the DOL review can be completed. The DOL must publish any proposed relief in the Federal Register, and all clients must be notified of the proposal in writing. In addition, generally there is a comment period of 30 days, after which the DOL must review and incorporate comments as appropriate. As a result of the long-standing process requirements and complexity of the matter, the DOL has informed Credit Suisse that it will not have published a final exemption by August 12, 2014. The agency has informed the Bank that it will need until approximately November 1, 2014, to grant permanent final relief. The requested period to allow DOL to finish addressing the request – a review period that would total only about five months from the plea hearing – is far from unusual under DOL's practice, especially in light of the requisite public notice procedure.

And securing the individual exemption *before* sentencing is crucial. Because the counterparties to the financial transactions would be liable for penalties for engaging in transactions with the Bank – up to 15% of the entire principal amount -- counterparties will not continue to engage in transactions with the Bank after judgment is entered, but before relief is granted. If the sentencing proceeds before relief is granted, therefore, the remedy will not be effective. The undersigned conferred with counsel for the United States, which does not oppose

this request, in order to avoid possible disruption of service and additional costs to the pension plan assets.

## **CONCLUSION**

For the reasons stated above, to enable the DOL to complete its review of Credit Suisse's request for relief prior to the sentencing, the Bank respectfully requests that this Court continue the sentencing until at least November 1, 2014.

Respectfully submitted,

/s/ Edmund P. Power
Christopher A. Wray, Esq. (*Pro Hac Vice*)
Andrew C. Hruska, Esq. (*Pro Hac Vice*)
Michael R. Pauzé, Esq. (*Pro Hac Vice*)
Edmund P. Power, Esq. (VSB # 65841)
KING & SPALDING LLP
1700 Pennsylvania Avenue N.W.
Washington, D.C. 20006
Direct Dial: (202) 626-5570
Direct Fax: (202) 626-3737
cwray@kslaw.com
ahruska@kslaw.com
mpauze@kslaw.com
epower@kslaw.com
Attorneys for Credit Suisse AG

July 8, 2014

# CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Mark Lytle
    Assistant United States Attorney
    U.S. Attorney's Office
    Eastern District of Virginia
    2100 Jamieson Ave.
    Alexandria, VA 22314
    Mark.lytle@usdoj.gov

    Mark F. Daly
    Special Assistant United States Attorney
    U.S. Attorney's Office
    Eastern District of Virginia
    2100 Jamieson Ave.
    Alexandria, VA 22314
    Mark.F.Daly@usdoj.gov

    /s/ Edmund P. Power
    Edmund P. Power, Esq.
    Virginia Bar Number 65841
    KING & SPALDING LLP
    1700 Pennsylvania Avenue
    Washington, D.C. 20006
    Phone: (202) 626-0500
    Fax: (202) 626-3737
    epower@kslaw.com
    Attorney for Credit Suisse AG