IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

FILED
NOV 17 2014
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 1:14-CR-188 |
| ) | |
| CREDIT SUISSE AG, ) | Timothy L. Blixseth |
| ) | Motion for Reconsideration |
| Defendant. ) | File *Pro Se* |

## BACKGROUND

Timothy L. Blixseth appeared *pro se* in the above referenced case and filed a motion to be a victim and filed a motion for restitution. This court denied both the motion to be designated a victim and the motion for restitution.

I respectfully ask this court to reconsider my two motions based largely on PAROLINE v. UNITED STATES No. 12–8561. Argued January 22, 2014—Decided April 23, 2014, and further reading of *McNulty*, 597 F.3d 344, 350 (6th Cir. 2010)

***PAROLINE*** dealt with a victim of child pornography asking for restitution from a defendant who was one of thousands who used her photographs illegally, but was the only one charged with the offense. The district court ruled the victim was not entitled to restitution and the fifth circuit court of appeals affirmed that decision. However the victim filed a writ of mandamus with the fifth circuit court of appeals and prevailed in an *en banc* decision. That decision was appealed to the U.S. Supreme Court and that court concluded that the victim was entitled to restitution and the case was remanded.

In the case before this court there are not thousands of geographically and temporally distant offenders acting independently and with whom the defendant had no contact as in *Paroline*. I dealt personally with Credit Suisse AG and their actions directly affected me. There is clearly only one defendant and guilty party which in itself helps clarify the victim status. The damage and blame for the defendant's actions are not spread between other unindicted or uncharged defendants it falls squarely on defendant Credit Suisse AG.

The question is what causal relationship must be established between the defendant's conduct and a victim's losses for purposes of determining the right to, and the amount of, restitution under §2259. Reading the statute to impose a general proximate-cause limitation accords with common sense. Proximate cause forecloses liability in situations where the causal link between conduct and result is so attenuated that the so-called consequence is more akin to mere fortuity.

In the case before this court there is no "*mere fortuity.*" Credit Suisse created offshore sham entities knowing that first event allowed it to break not only the laws Credit Suisse has pled

guilty to in this case, but that first event allowed Credit Suisse to be able to break *other* laws that caused harm to me. To say that one event proximately caused another means, first, that the former event caused the later, i.e. actual cause or cause in fact; and second, that is a proximate cause, i.e., it has a sufficient connection to the result.

In the guilty plea before this court and parallel with the victimization of myself, the first event in both cases was the creation of offshore entities which effected both outcomes. Outcome one, allowing Credit Suisse AG to conspire to break tax laws, destroy evidence, and other admissions in the statement of facts, outcome two, allowed Credit Suisse AG to break federal law, FIRREA. (For the court to note:)

In recent years, the U.S. Department of Justice ("DOJ") has begun using the civil money penalty provision of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") to investigate and prosecute persons suspected of financial fraud. Although FIRREA was enacted more than 20 years ago in the wake of the savings and loan crisis, its civil money penalty provision generally lay dormant until its recent resurrection by the DOJ as a tool to combat financial fraud, particularly residential mortgage fraud. As a result, there was until recently a scarcity of case law interpreting the civil penalty provision. Two recent decisions, however, address important issues of first impression regarding the scope of liability and calculation of civil penalties under FIRREA.

On April 24, 2013, a New York federal district court ruled that a federally insured financial institution may incur FIRREA liability for engaging in fraudulent conduct "affecting" itself (as opposed to frauds by third parties that victimized the bank). *See United States v. The Bank of New York Mellon*, No. 11 Civ. 06969 (S.D.N.Y). This case followed on the heels of a March 6, 2013 ruling by a California federal district court that set forth an eight-factor analysis to be used in assessing civil money penalties under FIRREA. *See United States v. Menendez*, No. 11 Civ. 06313 (C.D. Cal.). More recently the DOJ has used FIRREA in a complaint which names McGraw-Hill Companies, Inc. and its subsidiary, Standard & Poor's Financial Services LLC (collectively S&P) as defendants, seeks civil penalties under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) based on three forms of alleged fraud by S&P: (1) mail fraud affecting federally insured financial institutions in violation of 18 U..S.C. § 1341; (2) wire fraud affecting federally insured financial institutions in violation of 18 U.S.C. § 1343; and (3) financial institution fraud in violation of 18 U.S.C. § 1344. FIRREA authorizes the Attorney General to seek civil penalties up to the amount of the losses suffered as a result of the alleged violations. In this case the claims by the government totaled into the billions of dollars.

The proximate result of Credit Suisse's guilty plea has a direct and causal link to the common first event that I share with the victims in this case. One common first event links the subsequent events together. But for the first event no crimes would have been committed. In plain words they operated out of one house to break several laws.

*The simple and key phrase, "as a result of" plainly suggest a causation. In this case the result of the creation of offshore entities was the cause that allowed Credit Suisse to victimize me and the Internal Revenue Service.*

*The threshold question the Court faces is whether §2259 limits restitution to those losses proximately caused by the defendant's offense conduct.*

An 18 U.S.C. 371 Conspiracy crime which uses a tax offense as a predicate act cannot be limited to the lesser tax offense. The conspiracy crime is the greater offense & determines the boundaries for restitution & victim rights.

*Quoting 18 U.S.C.371 I will connect some of the dots in this case's guilty plea and my victimization by Credit Suisse AG.*

> "To conspire to defraud the United States means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention.

Hammerschmidt, 265 U.S. at 188.

Credit Suisse violated the above in both this case and with me. They used deceit, trickery, and dishonest means to obstruct lawful government functions in both instances. In my case the function of FIRREA, (perhaps additional violations of 18 U.S.C.371 if Credit Suisse AG did not report the income they made on my loan as U.S. income.) the legitimate official action and purpose of FIRREA was defeated by misrepresentation and chicane. The creation of the Credit Suisse Cayman Island Branch sham entity was conspired and created to defeat FIRREA and its lawful function. In this case they obstructed the function of the Internal Revenue Service by using the same sham offshore entity vehicles to disguise the identities of approximately 22,000 Americans failing to report their foreign earned income.

Section 371 further sums it up.

"The general purpose of this part of the statute is to protect governmental functions from frustration and distortion through deceptive practices. <u>Section 371 reaches "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.</u>" Tanner v. United States, 483 U.S. 107, 128 (1987); see Dennis v. United States, 384 U.S. 855 (1966). The "defraud part of section 371 criminalizes any willful impairment of a legitimate function of government, whether or not the improper acts or objective are criminal under another statute." United States v. Tuohey, 867 F.2d 534, 537 (9th Cir. 1989).

The word "defraud" in Section 371 not only reaches financial or property loss through use of a scheme or artifice to defraud but also is designed and intended to protect the integrity of the United States and its agencies, programs and policies. United States v. Burgin, 621 F.2d 1352, 1356 (5th Cir.), cert. denied, 449 U.S. 1015 (1980); see United States v. Herron, 825 F.2d 50, 57-58 (5th Cir.); United States v. Winkle, 587 F.2d 705, 708 (5th Cir. 1979), cert.

denied, 444 U.S. 827 (1979). Thus, proof that the United States has been defrauded under this statute does not require any showing of monetary or proprietary loss. United States v. Conover, 772 F.2d 765 (11th Cir. 1985), aff'd, sub. nom. Tanner v. United States, 483 U.S. 107 (1987); United States v. Del Toro, 513 F.2d 656 (2d Cir.), cert. denied, 423 U.S. 826 (1975); United States v. Jacobs, 475 F.2d 270 (2d Cir.), cert. denied, 414 U.S. 821 (1973).

Thus, if the defendant and others have engaged in dishonest practices in connection with a program administered by an agency of the Government, it constitutes a fraud on the United States under Section 371. United States v. Gallup, 812 F.2d 1271, 1276 (10th Cir. 1987); Conover, 772 F.2d at 771.

So there remains no doubt that Credit Suisse AG used the same scheme, common plan and deceptive practices to cause harm to the citize ns of the U.S. in this criminal case and with me. In my case they not only harmed me substantially but also harmed federally insured financial institutions which caused the willful impairment and defeating of the lawful function and integrity of the United States and its agencies, programs and policies, as they also did in this criminal case. The government came to the rescue of all citizens in this case, thus the proposed $666,500,000.00 restitution/ fine to the representative of the citizens, the IRS. This court has the authority to come to the rescue of a related and causally linked victim.

Reference to re McNulty, 597 F.3d 344, 350 (6th Cir. 2010). It refers to the specific and narrowly defined form of conspiracy of 15 U.S.C. § 1 – *the crime of antitrust conspiracy.* This is different from the expansive 18 U.S. Code § 371 with which the defendant is charged. Just after finding that McNulty was not a victim of Arctic Glacier's conduct, the district court acknowledged its ability to impose the condition of restitution to a sentence of probation. (Tr. at 119.)

McNulty states: "it appears logical that those directly and proximately harmed by criminal conduct in the course of the conspiracy beyond the overt act required to prove the conspiracy would be victims under CVRA, just as they would be under the VWPA and the MVRA." This reasoning is uni-directional and expansive. It expands a narrow understanding of victim under the CVRA to include a broad range of conspiracy victims and affords all MVRA conspiracy victims the full entitlements according to the CVRA. It does not operate in reverse direction, i.e., it doesn't reduce the definition of an MVRA conspiracy victim just because he may not appear to qualify under the CVRA.

A plain reading of the MVRA is expansive: (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

The statute describes an offense that <u>involves</u> as an element a scheme, conspiracy .... and harmed in the course of the conspiracy ..... Conspiracy harm is to be broadly read.

McNulty quotes case law which is expansive: Under the plain language of the statute, a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission." *In re Stewart,* 552 F.3d 1285, 1289 (11th Cir. 2008) (CVRA mandamus petition; circuit court held that mortgage borrowers were CVRA victims of conspiracy to deprive bank of honest services, where defendants were bank officer and co-conspirator whose offense caused borrowers to pay excess fees that defendants pocketed). *See, e.g., United States v. Johnson,* 440 F.3d 832, 835-39, 849-50 (6th Cir. 2006) (victims of four predicate criminal acts in RICO conspiracy conviction were MVRA victims, where district court found trial evidence established by a preponderance of the evidence that defendant was actively involved in all four predicate acts); &nb sp; *United States v. Washington,* 434 F.3d 1265, 1266-70 (11th Cir. 2006) (police department and another property owner were MVRA victims as to police car and property damaged during chase of defendant fleeing after bank robbery); *Moore v. United States,* 178 F.3d 994, 1001 (8th Cir. 1999) (bank customer was MVRA victim of attempted bank robbery; defendant had stood within six feet of customer and pointed sawed-off gun at him).

In quoting *U.S. v. HELMSLEY 1991.*

"Mrs. Helmsley's convictions for conspiracy under Count 1 and mail fraud under Counts 30-39 were for violations of Title 18 —18 U.S.C. § 371 and 18 U.S.C. § 1341, respectively. The VWPA thus applies.[18] Mrs. Helmsley argues, however, that a district court is barred from ordering restitution under VWPA for tax-related offenses because Congress has not authorized restitution for violations of Title 26, the Internal Revenue Code. This argument is misguided, however, because, as we explain *infra* in our discussion of the fines imposed for these counts, conspiracy and mail fraud are crimes distinct from their underlying predicate acts and purposes, and involve additional harms. Moreover, nothing in Section 3663 limits the court's power to order restitution in such instances. Finally, the Internal Revenue Service and the State of New York can be "victims" under the VWPA. *Cf. U".*

I would ask this court to reconsider my motion to be designated a victim and my motion for restitution. Should the court grant my motions for reconsideration I am prepared to present a statement of damages for restitution.

Sincerely, Timothy L. Blixseth pro se.

_____

Dated November 12, 2014.

CERTIFICATE OF SERVICE

I hereby certify that on November 12th, 2014, the foregoing was filed and served upon the following:

Mark Lytle
Assistant United States Attorney
U.S. Attorney's Office, Eastern District of Virginia
2100 Jamieson Ave.
Alexandria, VA 22314
mark.lytle@usdoj.gov

Edmund P. Power, Esq.
Andrew C. Hruska, Esq.
Michael R. Pauzé, Esq.
Christopher A. Wray
KING & SPALDING LLP
1700 Pennsylvania Ave, NW
Washington, D.C. 2006
Direct Dial: (202) 626-5570
Direct Facsimile: (202) 626-3737
cwray@kslaw.com
ahruska@kslaw.com
mpauze@kslaw.com
epower@kslaw.com



RECEIVED NOV 17 2014
R. B. SMITH, CHIEF JUDGE
U.S. DISTRICT COURT, NORFOLK, VA